UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| ZDENKA WILCOX, | § | Civil Action No. _____ |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| **Defendant**. | § | |
| | § | |
| _____ | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Zdenka Wilcox files this Original Complaint against Defendant Apple Inc. and alleges as follows:

**I. PARTIES**

1. Plaintiff Zdenka Wilcox is an individual citizen of the State of Texas residing in Tarrant County, Texas.

2. Defendant Apple Inc. is a corporation organized under the laws of the State of California with its principal place of business at One Apple Park Way, Cupertino, California.

3. Apple Inc. conducts continuous and systematic business within the State of Texas and within the Northern District of Texas.

1

4. Apple operates retail stores throughout Texas, including a retail store located at Southlake Town Square in Southlake, Texas, within this judicial district.

5. Apple designs, manufactures, markets, distributes, and sells Apple Watch devices and Apple Watch bands to consumers throughout Texas.

6. Apple places the Apple Watch and associated bands into the stream of commerce with the expectation that they will be purchased and used by consumers throughout Texas and the United States.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §1332(a).

8. Plaintiff is a citizen of Texas.

9. Defendant Apple Inc. is a corporation incorporated under the laws of the State of California with its principal place of business in Cupertino, California, and is therefore a citizen of California for purposes of 28 U.S.C. §1332(c)(1).

10. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in the Northern District of Texas under 28 U.S.C. §1391(b) because:

a. A substantial part of the events giving rise to this claim occurred in Tarrant County, Texas, which lies within the Fort Worth Division of the Northern District of Texas;

b. The product at issue was purchased within this district; and

c. Plaintiff's injuries occurred within this district.

12. This Court has personal jurisdiction over Apple because it purposefully directs business activities toward Texas residents, sells products throughout Texas, and maintains retail locations within this district.

13. Apple purposefully avails itself of the Texas market by marketing, distributing, and selling Apple Watch products and accessories to Texas consumers through its retail stores, authorized retailers, and online commerce platform.

## III. FACTUAL BACKGROUND

### A. The Product

14. Apple designs, manufactures, markets, and sells the Apple Watch Series 9 smartwatch and associated wristbands.

2

15.    Among the bands sold for the Apple Watch is the Gold Milanese Loop stainless steel band.

16.    The Milanese Loop band consists of woven stainless steel mesh and a solid stainless steel magnetic clasp designed to rest directly against the wearer's wrist during ordinary use.

17.    The band and clasp are constructed of stainless steel components that remain in direct and continuous contact with the wearer's skin while the product is worn.

18.    Stainless steel conducts heat more readily than materials commonly used in wristbands such as silicone, nylon, or leather. When stainless steel components are pressed directly against the skin, heat contacting the metal surface can be transferred to the skin more readily than with non-metal wristband materials.

19.    Because the Milanese Loop band is constructed of woven stainless steel mesh and a solid magnetic clasp that rest directly against the wearer's skin during ordinary use, the band can hold hot liquid against the wrist and prevent the liquid from immediately dissipating away from the skin.

20.    This heat-transfer and retention mechanism is not readily apparent during ordinary wear, and without an adequate warning a reasonable consumer would not anticipate that a watch band could materially increase the severity of a brief hot-liquid exposure.


**B. Foreseeable Use**

21.    Apple markets the Apple Watch and associated bands for continuous everyday wear.

22.    Ordinary and foreseeable use of a wrist-worn device includes use during routine household activities such as cooking and preparing beverages.

23.    Apple does not instruct consumers to remove metal watch bands during normal household activities involving hot liquids.

24.    Apple knew or should have known that consumers wearing wrist-worn devices routinely engage in activities involving hot liquids, including preparing coffee, tea, and other beverages. Contact between hot liquids and the wrist is a foreseeable occurrence during such activities. In those circumstances, the material composition and geometry of a wristband can influence whether thermal exposure dissipates quickly or is retained against the skin. The Milanese Loop band's metal construction and clasp geometry created a condition in which hot liquid contacting the wrist could be conducted, retained, and trapped against the wearer's skin.

25.    Consumers wearing wristwatches during routine household activities involving hot beverages or cooking is common and foreseeable use of a wrist-worn device.

26.    Plaintiff was using the Apple Watch and Milanese Loop band in the ordinary and foreseeable manner for which the product was designed and marketed.

3

## C. The Incident

27.    On August 7, 2025, Plaintiff Zdenka Wilcox was wearing an Apple Watch Series 9 equipped with a Gold Milanese Loop stainless steel band purchased from Apple's Southlake Town Square retail store in Southlake, Texas.

28.    While preparing coffee using a French press during ordinary household use, pressurized hot liquid escaped and contacted several areas of Plaintiff's body.

29.    The areas of skin that were not covered by the watch band experienced only minor superficial burns.

30.    By contrast, the area of Plaintiff's wrist covered by the Milanese Loop band and magnetic clasp sustained a substantially more severe burn injury. The severity of the burn beneath the band was materially greater than the burns sustained on adjacent uncovered skin that experienced the same hot-liquid exposure.

31.    Plaintiff sustained a deep partial-thickness (second-degree) burn beneath the band.

32.    The burn subsequently became infected and required emergency medical treatment at Baylor Scott & White Medical Center in Grapevine, Texas.

## D. Photographic Evidence of Differential Injury

33.    Photographs taken shortly after the incident show that the most severe burn occurred in a rectangular region corresponding to the area of the wrist covered by the Milanese Loop band and clasp.

34.    The surrounding exposed skin shows comparatively less severe injury consistent with superficial scald exposure.

35.    The geometric burn pattern corresponds to the width and position of the watch band.

36.    This pattern is consistent with heat and hot liquid being conducted, retained, and held against the skin beneath the metal band.

37.    The burn pattern visible in the photographs corresponds to the footprint of the Milanese Loop band and clasp where those components contacted Plaintiff's wrist.

38.    The location, shape, and severity of the burn are consistent with the area of the wrist where the Milanese Loop band and clasp were in direct contact with Plaintiff's skin at the time of the incident.

## E. Regulatory Notice

4

39.    The incident was reported to the United States Consumer Product Safety Commission through the SaferProducts reporting system.

40.    The report identified a burn injury associated with the Apple Watch Milanese Loop band.

41.    The report was transmitted to Apple on August 20, 2025.

42.    The SaferProducts reporting system permits manufacturers and importers to submit a public response to incident reports. Despite receiving notice of the reported injury from the Consumer Product Safety Commission, Apple did not submit any public manufacturer response addressing the reported incident.

43.    Apple's receipt of the CPSC report provided notice of a consumer injury associated with the Milanese Loop band and an opportunity to investigate the safety implications of the product.

## IV. DEFECTIVE DESIGN

44.    The Milanese Loop stainless steel band is defectively designed because its metal construction and clasp geometry conduct and retain heat and trap hot liquid against the wearer's skin.

45.    These design characteristics create a foreseeable risk that hot liquids contacting the wrist may be retained against the skin beneath the band.

46.    The design thereby materially increases the severity of thermal injury compared to exposed skin.

47.    Because of the material composition of the Milanese Loop band and clasp, the product was capable of conducting and retaining heat and trapping hot liquid against the wearer's skin during foreseeable household use. These characteristics created a condition that exposed consumers to an unreasonable risk of enhanced burn injury when the product was used in the manner intended and marketed by Apple.

48.    These characteristics rendered the Milanese Loop band unreasonably dangerous for its intended and foreseeable use.

## V. SAFER ALTERNATIVE DESIGN

49.    At the time the product left Apple's control, safer alternative designs were technologically and economically feasible.

50.    These alternatives include, but are not limited to:

a. incorporation of thermally insulating materials between metal band components and the wearer's skin;

b. watch band designs utilizing lower thermal conductivity materials or composite structures that reduce heat transfer to the skin;

c. clasp structures designed to reduce thermal mass and heat retention;

d. quick-release or breakaway band designs allowing rapid removal during thermal exposure.

51. The alternative designs described above would have materially reduced the transfer and retention of heat at the skin surface by limiting direct metal-to-skin contact and reducing the ability of the band structure to trap hot liquid against the wearer's wrist. By reducing thermal conduction and heat retention at the contact surface, these alternative designs would have significantly reduced the severity of burn injury during foreseeable hot-liquid exposure.

52. The risks created by the Milanese Loop band's metal construction and clasp geometry outweighed any utility of the design. Alternative band structures and insulating design features were available that would have materially reduced the risk of thermal injury while preserving the function, appearance, and utility of the product.

53. The alternative designs described above were technologically and economically feasible at the time the product left Apple's control.

54. These alternative designs were capable of maintaining the functional and aesthetic characteristics of the Milanese Loop band while reducing direct metal-to-skin thermal transfer.

55. Apple routinely designs and manufactures Apple Watch bands using materials such as silicone, woven nylon, leather, and composite fabrics that do not place stainless steel surfaces directly against the wearer's skin.

56. These safer alternative designs would have reduced the risk of severe burn injury without substantially impairing the product's utility, cost, or functionality.

## VI. FAILURE TO WARN

57. Apple knew or should have known that stainless steel bands conduct and retain heat.

58. Apple failed to warn consumers that metal watch bands may trap hot liquid against the skin and intensify burn injuries.

59. The risk that a metal watch band could retain heat and convert a brief hot-liquid exposure into a deeper burn is not a risk that ordinary consumers reasonably anticipate.

60.    Ordinary consumers do not expect that a wristwatch band marketed for continuous everyday wear will conduct and retain heat or trap hot liquid against the skin in a manner that materially intensifies a brief hot-liquid exposure into a deeper burn injury.

61.    Had Apple provided adequate warnings informing consumers that stainless steel watch bands could retain heat and trap hot liquid against the skin, Plaintiff would have removed the band or avoided wearing the metal band during activities involving hot liquids.

62.    Had adequate warnings been provided, consumers could have taken simple steps to avoid or mitigate the risk, including temporarily removing the band during activities involving hot liquids.

## VII. ENHANCEMENT OF BURN INJURY CAUSED BY PRODUCT DESIGN

63.    Even if the initial contact with hot liquid would have produced only minor burns, the Milanese Loop band conducted and retained heat and trapped hot liquid against Plaintiff's wrist.

64.    The escape of hot liquid from the French press constituted the initiating event. The Milanese Loop band did not cause the release of the liquid, but its stainless steel mesh and magnetic clasp conducted and retained heat and held hot liquid against Plaintiff's wrist, increasing the duration and intensity of thermal exposure at that location.

65.    The differential burn pattern observed in the photographs is consistent with thermal conduction and heat retention beneath the metal band and inconsistent with ordinary scald exposure to uncovered skin.

66.    As a result, the burn sustained beneath the band was substantially more severe than the minor superficial burns experienced on adjacent uncovered skin exposed to the same hot liquid.

## VIII. CORPORATE KNOWLEDGE

67.    On information and belief, Apple conducted internal engineering safety analysis relating to Apple Watch band materials and design.

68.    Apple maintains internal databases of:

    a.  consumer complaints

    b.  injury reports

    c.  product safety incidents

    d.  regulatory communications.

69.     On information and belief, Apple's internal consumer complaint databases, incident reporting systems, and product safety investigations contain prior reports or analyses relating to burn injuries or thermal hazards associated with metal Apple Watch bands.

70.     The engineering analyses, safety evaluations, and testing concerning the material properties and thermal characteristics of Apple Watch bands are within the possession, custody, and control of Apple. Consumers, including Plaintiff, do not have access to this information and must rely on the manufacturer to design reasonably safe products and provide adequate warnings regarding non-obvious hazards.

71.     On information and belief, Apple has received prior consumer complaints and incident reports concerning thermal injuries associated with metal Apple Watch bands.

## IX. CAUSES OF ACTION

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

## COUNT I - STRICT PRODUCTS LIABILITY – DESIGN DEFECT

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

The Milanese Loop band was defectively designed when it left Apple's control because its material composition and clasp geometry conducted and retained heat and trapped hot liquid against the wearer's skin, thereby creating an unreasonable risk of enhanced burn injury during foreseeable use.

A safer alternative design existed that would have materially reduced the risk and severity of burn injury without substantially impairing the utility of the product.

The risks posed by the Milanese Loop band's metal construction and clasp geometry outweighed the utility of the design. Safer alternative band structures and insulating design features were available that would have reduced the risk of thermal injury without substantially impairing the product's utility, appearance, cost, or functionality.

The defective design of the Milanese Loop band was a producing cause of Plaintiff's injuries because the band's metal construction and clasp geometry conducted and retained heat and trapped hot liquid against Plaintiff's wrist, materially increasing the duration and severity of the burn sustained at that location.

## COUNT II - FAILURE TO WARN

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Apple knew or should have known that the Milanese Loop band could conduct and retain heat and trap hot liquid against the wearer's skin.

Apple failed to provide adequate warnings informing consumers of this non-obvious risk.

The absence of adequate warnings rendered the product unreasonably dangerous and was a producing cause of Plaintiff's injuries.

## COUNT III - NEGLIGENCE

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Apple owed a duty to exercise reasonable care in the design, testing, investigation, marketing, and distribution of its products and to warn consumers of non-obvious risks associated with their foreseeable use.

Apple breached these duties by designing and selling the Milanese Loop band without adequate safeguards or warnings concerning the risk that the band could conduct and retain heat and trap hot liquid against the wearer's skin.

Apple's negligence was a proximate cause of Plaintiff's injuries.

## X. DAMAGES

Plaintiff has sustained damages including:

- medical expenses

- physical pain and suffering

- disfigurement

- physical impairment

- emotional distress.

Plaintiff may incur additional medical treatment, scar management care, and related expenses in the future.

The amount in controversy exceeds $75,000.

## XI. PRAYER FOR RELIEF

Plaintiff requests judgment for:

1. compensatory damages

2. medical expenses

3.   pain and suffering

4.   disfigurement damages

5.   costs of court

6.   pre- and post-judgment interest as allowed by Texas law

7.   all other relief to which Plaintiff is entitled.

## XII. JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

**/s/ Brian D. Wilcox**
Brian D. Wilcox
State Bar No. CA 244096
Brian D. Wilcox Law, PLLC
Southlake, Texas 76092
Telephone: 949-533-7530
Email: Brian@BrianDWilcoxLaw.com

ATTORNEY FOR PLAINTIFF